UNITED STATES DISTRICT COURT
EASTERN DIVISION OF KENTUCKY
**SOUTHERN DIVISION AT PIKEVILLE**

JOHN L. OWENS,                         )
                                       )
          Plaintiff,                   )
                                       )
     v.                                )    Case No. 7:14-CV-115-JMH
                                       )
CAROLYN W. COLVIN,                     )
Acting Commissioner of                 )    **MEMORANDUM OPINION & ORDER**
Social Security,                       )
                                       )
          Defendant.                   )

***

This matter is before the Court upon cross-motions for summary judgment (DE 9, 10) on Plaintiff's appeal, pursuant to 42 U.S.C. § 405(g), of the Commissioner's denial of his application for disability insurance benefits. The Court, having reviewed the record and the parties' motions, will deny Plaintiff's motion and grant Defendant's motion.

**I.**

The Administrative Law Judge ("ALJ"), conducts a five-step analysis to determine disability:

> 1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

> 2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.

4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 C.F.R. § 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id*. "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id*.

**II.**

On July 26, 2011, Plaintiff applied for supplemental security income pursuant to Title XVI of the Social Security Act ("the Act") (Tr. 201-08). Plaintiff was a younger person, i.e., an individual under the age of 50, on the date of the ALJ's

2

decision (Tr. 201). He is illiterate, but able to communicate in English (Tr. 219-20), and has past work experience as a groundskeeper, sanitation worker, and security guard (Tr. 55-59, 211-17). He alleged disability due to a heart attack and lack of education (Tr. 219).

Prior to his application date, Plaintiff was hospitalized for four days in June 2009 following a myocardial infarction. Muhammad Ahmad, M.D., diagnosed coronary artery disease (acute left myocardial infarction with angioplasty and stent placement), hypertension, 40 years of smoking, cholecystectomy, and left shoulder surgery (Tr. 404-07, 425-26). In July 2009, Plaintiff underwent a left heart catheterization, angiograms, a left ventriculogram, and angioplasty with stent placement in the circumflex artery (Tr. 401-02). In September 2009, an x-ray of Plaintiff's neck showed a small right cervical rib, but was otherwise normal (Tr. 427). Other x-rays of Plaintiff's spine showed mild scoliosis and wedge deformities and minimal spondylosis (degenerative osteoarthritis) (Tr. 428-29). The following month, Plaintiff was hospitalized after a drug overdose with alcohol and opiates. A urine drug screen was positive for barbiturates, cannabinoids, and alcohol (Tr. 568-604). In January 2010, Plaintiff told Dr. Ahmad that he had

sharp chest pain relieved with nitroglycerine (medication for chest pain) (Tr. 741). An echocardiogram showed moderate to severe left ventricular hypertrophy (increase in volume), hypokinesis, and dilated inferior vena cava, but otherwise mild findings (Tr. 611-16). A second left heart catheterization, angiograms, and left ventriculogram, showed a borderline lesion of the right coronary artery with inferior hyperkinesia (Tr. 645-46).

On July 26, 2011, Plaintiff's application date, he presented to Dr. Ahmad, reporting he was doing well cardiac-wise. He denied chest pain. He stated he had dyspnea (shortness of breath) but that it was stable (Tr. 742). Dr. Ahmad found Plaintiff had normal heart rhythm and no edema (swelling). He diagnosed coronary artery disease with no active complaints, controlled hypertension, dyslipidemia, tobacco abuse, and right hand pain. He refilled Plaintiff's medications and advised him to stop smoking (Tr. 743). In September 2011, Leigh Ann Ford, Ph.D., examined Plaintiff at the request of the state agency (Tr. 761-63). Plaintiff reported he last worked in 2009 as a night watchman, but left this job after four months due to a lay off. He reported his family physician treated him for depression and anxiety with medication. He stated he smoked cigarettes and

marijuana daily. He noted he was arrested three times on DUI charges and spent 30 days in jail with his last arrest in 2009. He stated he managed self-care tasks daily and occasionally visited with family but that he was unable to perform most household chores.

Dr. Ford found Plaintiff was oriented and had normal memory capacities and speech; cooperative attitude; appropriate thought content; logical and goal-directed organization of thought; good reality testing; low-average intelligence; and fair judgment; although he was unable to spell the word "world" backwards, avoided eye contact, and had somewhat variable attention and concentration; tense facial expressions; flat affect; pessimistic mood; somewhat below average fund of knowledge; capacity for abstraction limited to concrete interpretation of language; gaps in insight; overwhelmed coping skills; and skill deficits in the areas of activities of daily living and physical abilities (Tr. 762-63). Dr. Ford diagnosed substance abuse disorder and depressive disorder. She stated Plaintiff had no limitations on his ability to understand, remember, and carry out instructions toward performance of simple, repetitive tasks; slight limitations on responding appropriately to supervision, co-workers, and work pressures; and moderate limitations on his

ability to tolerate stress and pressures of day-to-day employment and sustain attention and concentration (Tr. 763).

In October 2011, Lea Perritt, Ph.D., a state agency psychologist, reviewed the evidence and found Plaintiff could handle simple instructions and procedures requiring brief learning periods, sustain attention on simple tasks requiring little independent judgment and minimal variations, interact as needed with supervisors and peers toward task completion with no more than occasional public contact, and adapt adequately to situational changes and conditions (Tr. 88-103).

In November 2011, Plaintiff complained of low back and leg pain to Dr. Azeb (Tr. 803), who found Plaintiff had intact sensation; normal reflexes; full muscle strength in his arms and legs; full range of motion and no tenderness in his neck, hips, and knees, but severe muscle spasms, tenderness, and limited range of motion in his low back and positive straight leg raising tests (test used to determine nerve root irritation) on the left (Tr. 804-05). Dr. Azeb diagnosed hypertension, obesity, chronic mechanical low back pain, low back radiculopathy, and paraspinal muscle spasms. He told Plaintiff to lose weight, exercise, and stop smoking (Tr. 805).

6

In January 2012, Timothy Gregg, M.D., a state agency physician, reviewed the evidence and found Plaintiff had abilities consistent with a range of light work (Tr. 106-22). Laura Cutler, Ph.D., a state agency psychologist, reviewed the evidence and found Plaintiff could understand, remember, and carry out simple one- and two-step instructions; sustain attention for extended periods of two hour segments for simple tasks; tolerate coworkers and supervisors with occasional contact with the public; and adapt to routine changes as needed (Tr. 106-22).

In March 2012, Plaintiff presented to Tara Newsome, M.D., with complaints of anxiety and headaches. Plaintiff reported he smoked one-and-a-half packs of cigarettes per day. Dr. Newsome found Plaintiff did not appear anxious or withdrawn and had appropriate dress, speech, and affect (Tr. 796-97). Dr. Newsome diagnosed headache and tobacco-use disorder. She prescribed medications and told Plaintiff to stop smoking (Tr. 798). Two months later, Plaintiff complained to Dr. Newsome of depression (Tr. 792). Dr. Newsome found Plaintiff was alert, active, well groomed, appropriately dressed, and in no acute distress. She diagnosed severe major depression, benign hypertension, and

coronary atherosclerosis and prescribed medications (Tr. 794-95).

In June 2012, Plaintiff presented to Suzanne Ford, D.O., for medication refills (Tr. 789). He reported smoking one-and-a-half packs of cigarettes per day and that his mood and energy had improved, though he complained of difficulty sleeping and leg pain. Dr. S. Ford found Plaintiff was alert, active, well groomed, appropriately dressed, and in no acute distress and had clear lungs with no wheezes, rales, or rhonchi and regular heart rate and rhythm. She diagnosed tobacco use disorder (Tr. 790). She prescribed medication and instructed Plaintiff to stop smoking (Tr. 791). The following August, Plaintiff complained to Dr. S. Ford of restless legs (Tr. 787), who diagnosed benign hypertension, coronary atherosclerosis, headaches, and severe major depression, prescribed medications, and advised him to quit smoking (Tr. 788). In September 2012, Dr. S. Ford found Plaintiff had appropriate dress, speech, and affect and did not appear anxious or withdrawn, diagnosed anxiety state, and prescribed medications (Tr. 784-85).

The following month, Dr. S. Ford diagnosed Plaintiff with restless leg syndrome (Tr. 782). In December 2012, Plaintiff complained to Dr. Azeb of chronic low back pain. 3Plaintiff told

Dr. S. Ford he continued to smoke one-and-half packs of cigarettes per day at subsequent monthly visits from August to October 2012 (Tr. 781, 784, 787).4 Dr. S. Ford made the same or similar findings in August and October 2012 (Tr. 781, 787).

Plaintiff had full strength in his arms and legs and a normal gait, but low back tenderness and a positive straight leg raising test on the left. He diagnosed lumbago, muscle spasms, radicular pain, facet syndrome, and degenerative disc disease (Tr. 801). In February 2013, Dr. Azeb stated Plaintiff could sit and walk for one hour and stand for two hours each at one time and sit, stand, and walk for less than one hour each in an eight-hour workday; occasionally reach, push/pull, use foot controls, climb ladders or scaffolds, and be exposed to extreme heat or cold; and never lift or carry anything weighing up to 10 pounds, climb stairs or ramps, operate a motor vehicle, be exposed to moving mechanical parts or vibrations, travel without companion assistance, walk a block at a reasonable pace on rough or uneven surfaces, hear and understand simple oral instructions and communicate simple information, read very small print, or view a computer screen (Tr. 806-11).

In August 2011, Plaintiff reported he experienced a lack of energy, extreme fatigue and sleepiness, shortness of breath,

chest pain, depressive thoughts, and difficulty relating to others (Tr. 229-32). Regarding his functional limitations, he alleged his impairments negatively affected his memory as well as his ability to lift, squat, bend, stand, reach, sit, kneel, talk, climb stairs, concentrate, complete tasks, understand and follow instructions, and get along with others (Tr. 238). He noted he needed reminders to take medications and was unable to pay bills or handle bank accounts (Tr. 235-36). Plaintiff reported he did not have difficulty with his personal care (Tr. 234), mowed the grass (Tr. 235), and went outside a lot (Tr. 236), but did not prepare his own meals (Tr. 235). He stated he accompanied his wife when she went shopping (Tr. 236), watched television every day (Tr. 237), and helped care for his son with his wife (Tr. 234).

During an administrative hearing in this matter (Tr. 26-69), Plaintiff, who was represented by an attorney, testified he could not stand being out in a crowd (Tr. 29, 47, 51). He stated he took medications to relieve his symptoms (Tr. 30-31). He testified he had three stents placed in 2009 (Tr. 29, 32, 35). He testified he could walk the length of about half a football field before becoming short of breath and experiencing back pain and that shortness of breath impaired his ability to walk and

climb stairs (Tr. 32-33, 35-36, 39). He stated his doctor told him not to lift over 10 pounds and he had problems lifting things overhead (Tr. 38). He stated he could stand for up to 20 minutes before needing to change positions due to back pain and experienced "stabbing and burning" pain running down his legs to his toes, which go numb (Tr. 40-42). He testified walking, standing, squatting, kneeling, and rainy or cold weather caused back pain (Tr. 43-45). He obtains relief from the intensity of his back and leg pain using Neurontin and by sitting in a tub of hot water or using a heating pad. Plaintiff also testified that his blood pressure fluctuations caused him to suffer headaches of a one hour duration on at least two to three occasions each week and that the headaches, coupled with chest pain, caused him to suffer from nausea two to three times a week (Tr. 39-40). Plaintiff testified that he has suffered from memory loss, has difficulty concentrating, and has mood swings as a result of his heart attack and other medical problems (Tr. 46-48).

The ALJ asked David Burnhill, a vocational expert, to assume a hypothetical individual of Plaintiff's age, education, and work experience, who could:

> . . . perform less than the full range of light work wherein he can lift and carry, push and pull pounds frequently and 20 pounds occasionally. This hypothetical

> individual can sit, stand and walk six hours
> each out of an eight-hour workday as
> necessary. This hypothetical individual can
> occasionally reach overhead with the left
> upper extremity . . . . This hypothetical
> individual is also right-hand dominant. This
> hypothetical individual must avoid
> concentrated exposure to extreme cold and
> extreme heat. The[] hypothetical individual
> can understand, remember and carry out
> simple, routine, repetitive tasks. He is
> limited to making no more than simple, work-
> related decisions. He can occasionally
> interact with the public and he can tolerate
> occasional changes in a routine work
> setting.

(Tr. 60-61). The vocational expert testified that, while this individual could not perform his past relevant work, he could perform other work, including the jobs of night cleaner (Tr. 61), bagger (Tr. 61-62), floor worker, table worker, plastic design applier (Tr. 62), and assembler (Tr. 62-63).

In reaching her decision, the ALJ followed the five-step sequential evaluation set forth in the agency's regulations for determining disability (Tr. 9-21). *See* 20 C.F.R. § 416.920(a)(4). She found Plaintiff had the residual functional capacity for a range of light work as defined in 20 C.F.R. § 416.967(b) with limitations as set forth in her hypothetical question to the vocational expert discussed above (Tr. 14-19). At step four, the ALJ found Plaintiff could not perform his past

12

relevant work (Tr. 19); however, at step five, relying on the vocational expert's testimony, the ALJ found Plaintiff could perform other work existing in significant numbers in the national economy, including the jobs cited by the vocational expert discussed above (Tr. 19-21). Therefore, the ALJ found Plaintiff was not disabled (Tr. 21).

After the ALJ issued an unfavorable decision on April 8, 2013 (Tr. 6-21), Plaintiff requested review of the ALJ's decision by the agency's Appeals Council (Tr. 5). The Council denied Plaintiff's request, making the ALJ's decision the Commissioner's final decisions for purposes of judicial review. Plaintiff now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

**III.**

Pursuant to 42 U.S.C. § 405(g), this Court reviews this administrative decision to determine "whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)) (internal quotation marks omitted). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Id.* (quoting *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009)) (internal quotation marks omitted).  In other words, as long as an administrative decision is supported by "substantial evidence," this Court must affirm, regardless of whether there is evidence in the record to "support a different conclusion." *Lindsley*, 560 F.3d at 604-05 (citing *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)) (internal quotation marks omitted) ("administrative findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion").  A reviewing court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012).

## IV.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence of record because the ALJ improperly discounted the severity of his impairments and substituted, instead, her impression of the Plaintiff's disability over the medical evidence of record.  Specifically, he argues that the ALJ erred by failing to give greater weight to the opinion of his treating physician, Dr. Ashraf Azeb, with respect to his

14

residual functional capacity and gave greater weight, instead, to a consulting, examining physician's opinion.

Dr. Azeb opined that the Plaintiff can never lift or carry more than ten (10) pounds due to his physical conditions, only sit for one (1) hour without interruption and for less than one (1) hour total in an eight (8) hour workday, only stand for two (2) hours without interruption and for less than one (1) hour total in an eight (8) hour workday, only walk for one (1) hour without interruption and for less than one (1) hour total in an eight (8) hour workday, only occasionally reach overhead and push or pull with his right hand, which is his dominant hand, only occasionally operate foot controls with his feet, never climb stairs and ramps or balance, and only occasionally climb ladders or scaffolds. (Tr. 806-09). Dr. Azeb felt that the Plaintiff is unable to hear and understand simple oral instructions and to communicate simple information and that he would be unable tread very small print or view a computer screen. (Tr. 809). By contrast, the ALJ concluded that the Plaintiff had the residual functional capacity to perform a range of light work except that he could "occasionally reach overhead with the left non-dominant upper extremity; must avoid concentrated exposure to extreme cold and heat; can understand,

15

remember, and carry out simple, routine repetitive tasks; can make simple work-related decisions; can occasionally interact with the public; and can tolerate occasional changes in a routine work setting." (Tr. 14).

In reaching this conclusion, the ALJ gave "little weight to [Dr. Azeb's] opinion . . . because it is not supported by either the claimant's own subjective reports or Dr. Azeb's own exam performed in 2012." She cited, as well, Dr. Azeb's brief treatment relationship with the Plaintiff, lasting only a few months, as eroding his credibility. (Tr. 19.) She afforded mixed weight to the opinions of state agency psychological consultant Lea Perritt, Ph.D., great weight to state agency psychological consultant, Laura Cutler, Ph.D., and mixed weight to the opinion of state agency medical consultant, Dr. Timothy Gregg, in reaching a decision about Plaintiff's residual functional capacity.

Residual functional capacity "is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations that may affect his or her ability to do work related physical or mental activities." Social Security Ruling ("SSR") 96-8p, 1996 WL

16

374184, at *2. It is the most a person can do, despite his
limitations. *See id.* At the hearing level of the administrative
process, the ALJ bears the responsibility of assessing a
claimant's residual functional capacity. *See* 20 C.F.R. §§
416.945, 416.946(c); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d
387, 390 (6th Cir. 2004) ("The determination of disability is
ultimately the prerogative of the Commissioner, not the treating
physician." (quotation and brackets omitted)). In making this
finding, the ALJ must decide what weight, if any, to accord the
medical opinions of record.

"Medical opinions" are defined as "statements from
physicians and psychologists or other acceptable medical sources
that reflect judgments about the nature and severity of your
impairment(s), including your symptoms, diagnosis, and
prognosis, what you can still do despite impairment(s), and your
physical and mental restrictions." *Id.* § 416.927(a)(2). Some
"medical opinions" are entitled to "controlling weight." *See id.*
§ 416.927(c)(2). To be eligible for controlling weight, the
opinion must be a medical opinion and must also (1) come from a
treating source, i.e., an acceptable medical source "who
provides you, or has provided you with medical treatment or
evaluation and who has, or has had, an ongoing treatment

17

relationship with you," id. § 416.902; (2) be "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (3) be "not inconsistent" with the other substantial evidence in the case record. SSR 96-2p, 1996 WL 374188, at *2. If no opinion is entitled to controlling weight, the agency considers several factors in deciding how much weight to give an opinion, including the nature of the medical source's relationship with the claimant, supportability, consistency, specialization, and any other factors that tend to support or contradict the opinion. *See* 20 C.F.R. §§ 416.927(c)(1)-(6).

The ALJ concluded that Dr. Azeb's opinions were inconsistent with Plaintiff's own subjective reports and the exam conducted by Dr. Azeb in 2012. (Tr. 19). Rather than offering support from the record to demonstrate why his opinions were consistent with the rest of the record, Plaintiff's argument can be summed up as "Plaintiff is clearly disabled by his physical impairments as addressed in the medical records." Plaintiff does not bother to direct the Court to any particular aspect of that record in support of his position and to counter the conclusion reached by the ALJ, beyond asking the Court to conclude that the ALJ's decision was, simply, wrong.

This is not enough to persuade the Court to reverse the decision of the ALJ. Rather, the Court understands the ALJ's decision in the context of the evidence that she cited and which the Commissioner has drawn to the Court's attention. Plaintiff reported in August 2011 that he helped care for his son, did not have difficulty with his personal care (Tr. 234), mowed the grass (Tr. 235), went outside a lot, went shopping with his wife (Tr. 236), and watched television (Tr. 237). Plaintiff told Leigh Ann Ford, Ph.D., in September 2011 that he managed his self-care tasks daily and occasionally visited with family (Tr. 762-63). In his own records, Dr. Azeb noted, in November 2011, that Plaintiff had intact sensation; normal reflexes; full muscle strength in his arms and legs; full range of motion and no tenderness in his neck, hips, and knees, although he had muscle spasms, tenderness, and limited range of motion in his low back and positive straight leg raising tests on the left (Tr. 804-05). In December 2012, Dr. Azeb found Plaintiff had full strength in his arms and legs and a normal gait, although he had low back tenderness and a positive straight leg raising test on the left (Tr. 801), findings he repeated in January 2013 (Tr. 800). None of this is in keeping with Dr. Azeb's

19

conclusions   regarding   Plaintiff's   limitations   reached   on
February 18, 2013.

The   Plaintiff   has   provided   the   Court   citations   to   the
record   for   a   panoply   of   self-reported   pains   and   symptoms,   but
they   are   either   accounted   for   in   the   residual   functional
capacity   conclusion   of   the   ALJ   (e.g.,   avoiding   exposure   to   heat
and   cold)   or   simply   out   of   keeping   with   the   medical   and
anecdotal   evidence   of   record,   such   that   the   ALJ   appropriately
discounted   them.   The   ALJ   appropriately   considered   the   record   as
a   whole   when   evaluating   Dr.   Azeb's   opinion   and   concluding   that
it   was   unsupported   by   the   evidence.   *See   id*.   § 416.927(c)(4)
(stating   an   ALJ   must   consider   whether   an   opinion   is   consistent
with   the   record   as   a   whole);   SSR   96-2p,   1996   WL   374188,   at   *3
("a   treating   source's   medical   opinion   on   what   an   individual   can
still   do   despite   his   or   her   impairment(s)   will   not   be   entitled
to   controlling   weight   if   substantial,   nonmedical   evidence   shows
that   the   individual's   actual   activities   are   greater   than   those
provided   in   the   treating   source's   opinion).   An   ALJ   can   discount
the   opinion   of   a   physician   when,   as   in   this   case,   the   doctor's
opinions   are   not   supported   by   his   own   findings.   20   C.F.R.   §
416.927(c)(3)   ("The   more   a   medical   source   presents   relevant
evidence   to   support   an   opinion,   particularly   medical   signs   and

20

laboratory findings, the more weight we will give that opinion."); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997) (An ALJ may discount a doctor's opinion when the doctor's findings are not supported by objective medical evidence or are inconsistent with the record as a whole).  The strength of Dr. Azeb's opinion is further weakened, as the ALJ notes, when there is no particularly remarkable basis for a longitudinal assessment of Plaintiff's capacity for work by Dr. Azeb, who saw Plaintiff in November 2011 (Tr. 803-05) and then did not see him again until December 2012 (Tr. 801) and January 2013 (Tr. 800). *See* 20 C.F.R. § 416.927(c)(2)(i) (stating an ALJ should consider whether a treating source has seen a claimant "a number of times and long enough to have obtained a longitudinal picture" of the claimant's impairment); *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 378 (6th Cir. 2013) (holding that the little weight that the ALJ gave to an opinion of a psychological therapist was sufficiently supported, where the therapist saw claimant for only five months).  Ultimately, this Court concludes that the ALJ reasonably assigned only little weight to Dr. Azeb's opinions.

Neither did the ALJ err in how she considered Plaintiff's subjective complaints while evaluating his residual functional

capacity. First, an adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms. Second, once an underlying impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *See* 20 C.F.R. § 416.929(c)(4) ("we will evaluate your statements in relation to the objective medical evidence"); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 543 (6th Cir. 2007) ("[T]he record is replete with medical evidence that Cruse's symptoms were not as severe as she suggested."); SSR 96-7p, 1996 WL 374186, at *2. In so doing, adjudicators consider factors such as the objective medical evidence; the claimant's activities; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to his symptoms. *See id*.

The Commissioner has adequately summarized the relevant information as follows:

> The ALJ concluded that Plaintiff's subjective complaints were not consistent with the objective medical evidence (Tr. 16). *See*, as discussed above, (Tr. 800-01, 803-05 (compiling Dr. Azeb's findings); Tr. 743 (Dr. Ahmad's July 2011 finding that Plaintiff had a normal heart rate and rhythm and no edema); Tr. 762-63 (Dr. L. Ford's September 2011 finding that , Dr. L. Ford found Plaintiff was oriented and had normal memory capacities and speech; cooperative attitude; appropriate thought content; logical and goal-directed organization of thought; good reality testing; low average intelligence; and fair judgment, although he could not spell the word "world" backwards, avoided eye contact, and had somewhat variable attention and concentration; tense facial expressions; flat affect; pessimistic mood; somewhat below average fund of knowledge; capacity for abstraction limited to concrete interpretation of language; gaps in insight; overwhelmed coping skills; and skill deficits in activities of daily living and physical abilities. In March 2012, Dr. Newsome found Plaintiff did not appear anxious or withdrawn and had appropriate dress, speech, and affect (Tr. 796-97). Two months later, she found Plaintiff was alert, active, well groomed, appropriately dressed, and in no acute distress (Tr. 794-95). Dr. S. Ford who consistently found Plaintiff was alert, active, well groomed, appropriately dressed, and in no acute distress and had clear lungs with no wheezes, rales, or rhonchi and regular heart rate and rhythm from June to October 2012 (Tr. 781, 787, 790).

[DE 10 at 5, Page ID#: 879.]

23

Further, there is evidence of record to support the ALJ's conclusion that Plaintiff's activities of daily living were inconsistent with his subjective complaints of disabling symptoms (Tr. 13, 16), including the activities he reported in August 2011 (Tr. 234-37) and to Dr. L. Ford (Tr. 762-63). *See* 20 C.F.R. § 416.929(c)(3)(i) (stating an ALJ must consider a claimant's activities); *Cruse*, 502 F.3d at 543 (it is appropriate for the ALJ to take a claimant's daily activities into account in making his credibility determination). Finally, there is evidence of record to support the ALJ's conclusion that Plaintiff's subjective complaints were undermined by his failure to follow treatment (Tr. 17) and his decision to continue smoking cigarettes despite the fact that his physicians repeatedly telling him to stop (Tr. 762-63, 781, 784, 787-88, 791, 796-98, 805). *See* 20 C.F.R. § 416.929(c)(4) (stating an ALJ must consider inconsistencies in the evidence).

As if all of the above would not be enough, there are issues which Plaintiff does not even broach. For example, the ALJ also properly considered evidence concerning Plaintiff's criminal activity, only to conclude that it detracted from his credibility (Tr. 17). There is evidence of record that Plaintiff told Dr. L. Ford he smoked marijuana on a daily basis,

24

was arrested three times on DUI charges, and spent 30 days in jail with his last arrest in 2009 (Tr. 762-63). *See id.* § 416.929(c)(4) (stating an ALJ must consider a claimant's history). The ALJ also considered and determined that Plaintiff's credibility was undermined by the fact he stopped working for reasons unrelated to his impairments (Tr. 17 and 762-63). *See id.* § 416.929(c)(3) (stating an ALJ must consider evidence about a claimant's prior work record). As the ALJ further found, the evidence did not show Plaintiff ever sought treatment from a mental health professional, which might have offered credence to his claims of impairment (Tr. 17). *See id.* § 416.929(c)(4).

Ultimately, the Court concludes that the ALJ did not err when she decided to give less weight to the opinion of the treating physician in developing an RFC and greater weight to that of the state consulting psychologists and physician. Having determined that the ALJ had the residual functional capacity for a range of light work with limitations as set forth above and relying on testimony from a vocation expert which assumed a hypothetical individual with Plaintiff's residual functional capacity, the ALJ appropriately relied on that testimony to conclude that Plaintiff, much like the hypothetical

25

person, could not perform his past relevant work but could perform other work, including the jobs of night cleaner, bagger, floor worker, table worker, plastic design applier, and assembler in numbers that she found to be significant. (Tr. 20-21, 60-63); *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004) ("[T]he Commissioner may rely on the testimony of a vocational expert to find that the claimant possesses the capacity to perform other substantial gainful activity that exists in the national economy." (citations omitted)).

## V.

Plaintiff has not demonstrated error on the part of the ALJ in establishing a residual functional capacity, presenting a hypothetical question to the vocational expert based on that assessment, and relying on the testimony of the vocational expert in response to that hypothetical question in determining that there are jobs that Plaintiff can do. *See Foster v. Halter*, 279 F.3d 348, 356-57 (6th Cir. 2001); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779-80 (6th Cir. 1987). Substantial evidence supports the ALJ's findings and her conclusion that Plaintiff was not disabled within the meaning of the Social Security Act.

For all of the reasons stated above, the Court concludes that Summary Judgment in favor of Defendant is warranted. Accordingly, **IT IS ORDERED:**

(1)  that Plaintiff's Motion for Summary Judgment [DE 9] is **DENIED;** and

(2)  that Defendant's Motion for Summary Judgment [DE 10] is **GRANTED.**

This the 1st day of October, 2015.



**Signed By:**

**_Joseph M. Hood_**

**Senior U.S. District Judge**

27